Honorable Jim Honeyford State Senator, 15th District P. O. Box 40415 Olympia, WA 98504-0415
Honorable Joyce Mulliken State Senator, 13th District P. O. Box 40413 Olympia, WA 98504-0413
Honorable Bob Morton State Senator, 7th District P. O. Box 40407 Olympia, WA 98504-0407
Honorable Jerome Delvin State Senator, 8th District P. O. Box 40408 Olympia, WA 98504-0408
Honorable Mark Schoesler State Senator, 9th District P. O. Box 40409 Olympia, WA 98504-0409
Dear Senators Honeyford, Morton, Mulliken, Delvin, and Schoesler:
By letter previously acknowledged, you have asked for our opinion on the following questions, paraphrased for clarity:
1. Does RCW 15.66.110(1) permit the adoption of a marketing order establishing a commodity commission whose membership (or a majority of whose membership) is elected by the affected producers?
2. If the producers of a commodity petition to establish or amend a marketing order under RCW 15.66.110, thereby providing that the [original page 2] commission (or a majority of its members) is elected by the affected producers, may the director of agriculture deny the petition or amend the portions defining how commission members will be selected?
 BRIEF ANSWERS
RCW 15.66.110 permits the establishment of a commodity commission whose members are elected by the affected producers-either all, or a majority of, the commission members. However, the director of agriculture is not obligated to agree to such an arrangement and may deny or amend a petition proposing to establish a commodity commission whose members are selected in that manner.
 ANALYSIS
Agricultural commodity commissions have been a part of Washington law for many years. The general pattern has been that the producers of a particular agricultural product join together to form a commission which engages in generic advertising and marketing, research, education, and similar activities promoting the commodity in question, funded by mandatory assessments against the producers. Some commissions are specifically created by statute, such as the apple commission (RCW15.24), the dairy products commission (RCW 15.44), and the wine commission (RCW 15.88). Many other commissions are created through an administrative process established under either RCW 15.65 or RCW 15.66. This process is the subject of your questions.[1]
1. Does RCW 15.66.110(1) permit the adoption of a marketing order establishing a commodity commission whose membership (or a majority of whose membership) is elected by the affected producers?
The process for establishing a commodity commission under RCW 15.66
begins with a petition signed by "not less than five percent or one hundred of the producers alleged to be affected, whichever is less" and filed with the director of the department of agriculture. RCW15.66.050(1).[2] RCW 15.66.110 sets forth how a commodity commission is organized. Each [original page 3] marketing order is to establish a commission composed of not less than five nor more than fifteen members. RCW 15.66.110(1). The commission members serve rotating terms. Id.
Before the statute was amended in 2002 (Laws of 2002, ch. 313, § 51), it provided that at least two-thirds of the members of a commission would be "elected by the affected producers and such elected members shall all be affected producers." RCW 15.66.010 (pre-2002 version). As a result of 2002 and 2003 amendments (Laws of 2003, ch. 396, § 4; Laws of 2002, ch. 313, § (51), a marketing order may now "provide that a majority of the commission be appointed by the director". RCW 15.66.110(2). The net effect of the amendments is to permit the establishment of commodity commissions following either pattern-majority of members elected by the affected producers or majority appointed by the director.[3]
We understand that the amendments to the statute were largely driven by federal litigation casting doubt on the constitutionality of the traditional commodity commission format in light of the advertising and related activities in which such commissions have engaged. In United States v. United Foods, Inc., 533 U.S. 405,121 S. Ct. 2334,150 L. Ed. 2d 438
(2001), the United States Supreme Court held that mandatory assessments on the producers of a commodity used for generic advertising violated the first amendment of the constitution protecting freedom of speech, because the mandatory assessments were a form of "forced speech" as to producers who might not wish to participate in the advertising or who objected in some other way to the commission's use of their money. A federal court in this state invalidated the apple commission's assessment system, following the same reasoning. In re Wash. State Apple Adver. Comm'n, 257 F. Supp. 2d 1274 (E.D. Wash. 2003); In re Wash. State Apple Adver. Comm'n, 257 F. Supp. 2d 1290 (E.D. Wash. 2003). The apple commission argued that it engaged in "governmental speech" (which is a recognized exception to the "forced speech" analysis), but the court rejected this argument, holding that the apple commission did not pass the test for "governmental speech" set forth in Lebron v. National Railroad Passenger Corp., 513 U.S. 374, 115 S. Ct. 961, 130 L. Ed. 2d 902
(1995).[4] The recent amendments providing for appointment of commission members are intended to help satisfy this test.
With the current statutory language and the case law as background, you have asked whether, under current statutory law, the producers of a commodity may file a petition for a marketing order which would establish a commission whose membership would be elected (either entirely or in the majority) by the affected producers as set forth in subsection (1) of [original page 4] RCW 15.66.110, rather than appointed by the director in the alternative scheme set forth in subsection (2) of the same statute.
The language of the statute plainly requires an affirmative answer to your first question, in that the 2002 and 2003 amendments to RCW15.66.110 did not eliminate the language providing for a commission elected by the producers but simply added a second option of a commission primarily appointed by the director. So far as state law is concerned, a producer-elected commission is still one option.
2. If the producers of a commodity petition to establish or amend a marketing order under RCW 15.66.110, thereby providing that the commission (or a majority of its members) is elected by the affected producers, may the director of agriculture deny the petition or amend the portions defining how commission members will be selected?
The statutes clearly establish that the producers of a commodity may propose a marketing order under which the membership of a commodity commission would be elected by the producers. The statutes are also clear that the director of agriculture is not legally required to agree to such an arrangement and may deny or modify a proposed marketing order or a proposed amendment to an existing marketing order after following the procedures set forth in law.
RCW 15.66 sets up a relatively detailed process for the director to follow when receiving a petition to form a commodity commission or to amend or rescind a previous order creating such a commission. The process is a rule-making process under RCW 34.05, although it is exempt from various procedural statutory requirements if the adoption of the rule will be determined by a referendum vote. RCW 15.66.053(1), (2). The director may make certain amendments without a referendum (RCW15.66.053(3)), but an amendment providing for a majority of the commission members to be appointed by the director must be approved by referendum to the producers. A public hearing is conducted (see RCW15.66.070), leading to the director's adoption of findings, conclusions, and a recommended decision. RCW 15.66.080. The recommended decision may deny or approve the proposal in its entirety or recommend an order containing other or different terms or conditions. RCW 15.66.080(2). After a period of time for comment on the recommended decision, the director issues a final decision. RCW 15.66.080(5). RCW 15.66.090
requires the director to obtain the assent of the producers for the final order, through a referendum, and describes how such a referendum will be conducted.
From the foregoing discussion, it is clear that the director is not obligated to issue a marketing order or amended marketing order for a commodity commission whose membership would be elected by the affected producers, even if the petition received contains provisions for such a selection system. After following the statutory processes discussed above, the director may deny such a petition or amend it. If the director approves the proposal, it then is subject to a [original page 5] referendum by the producers.[5] Therefore, the option as to which form of organization to follow does not lie solely with either the producers or with the director, and it effectively requires them to reach agreement on this point.[6]
We trust the foregoing will prove useful to you.
Sincerely,
ROB MCKENNA Attorney General
JAMES K. PHARRIS Senior Assistant Attorney General
:pmd
[1] Your questions were specifically about RCW 15.66, so we refer specifically to that chapter in this opinion. It appears that the same issues would be present with a commodity board organized under RCW15.65, however, and we would likely follow the same analysis.
[2] RCW 15.66.050(1) makes it clear that the process can be used either to create a new commodity commission or to modify or terminate a marketing order previously establishing such a commission. The statute also permits an existing commodity commission to initiate a petition by majority vote of the commission's membership.
[3] When the commission members are appointed by the director, RCW15.66.113 requires the director to appoint either of two candidates winning the highest number of votes in an advisory ballot conducted among the affected producers.
[4] The Lebron test has three parts: (1) the entity must have been created by special law, (2) to engage in activities designed to achieve governmental purposes, and (3) the majority of its members must be appointed by government. Lebron, 513 U.S. at 400.
[5] If the director does not agree to a producer-elected commission, and the producers refuse to vote for an amendment providing for a director-appointed commission, there would obviously be a standoff preventing the adoption of any proposed order or amended order. We will not speculate how such an impasse could be resolved.
[6] One option, of course, would be legislation specifying in statute the organizational functions of a particular board or commission.